UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: _____

E.R.J. INSURANCE GROUP, INC., d/b/a
AMERICAN HERITAGE INSURANCE
SERVICES, and PABLO CREEK
SERVICES, INC.,

    Plaintiffs,

vs.

JOHN NELSON PATRICK MCEACHERN
and BLUE DEALER SERVICES, INC.,

    Defendants.

_____/

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs, E.R.J. Insurance Group, Inc., d/b/a American Heritage Insurance Services and Pablo Creek Services, Inc. (collectively "Allstate Dealer Services"), file their Complaint for Declaratory Judgment against Defendants, John Nelson Patrick McEachern and Blue Dealer Services, Inc., and allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, E.R.J. Insurance Group, Inc., d/b/a American Heritage Insurance Services is incorporated in Florida with its principal place of business in Jacksonville, Florida.

2. Plaintiff Pablo Creek Services, Inc., is incorporated in Illinois with its principal place of business in Jacksonville, Florida.

3. Defendant John Nelson Patrick McEachern ("McEachern") resides in and is a citizen of the State of Michigan.

4. Defendant Blue Dealer Services, Inc., a dissolved corporation, was incorporated in Michigan with its principal place of business in Michigan, and was a citizen of the State of Michigan.

5. Allstate Dealer Services brings this action to obtain a declaratory judgment finding that Defendants have no right or ability to demand arbitration pursuant to the April 30, 2013 Agent Agreements between Allstate Dealer Services and Blue Dealer Services, Inc., attached as **Exhibit 1** and **Exhibit 2**.

6. Defendants submitted a written demand for arbitration to Allstate Dealer Services on June 17, 2020, attached as **Exhibit 3**. The demand for arbitration asserted that Blue Dealer Services, Inc., has sustained damages of "millions of dollars." Defendants claim that the damages are ongoing, due to Allstate Dealer Services' allegedly wrongful conduct in failing to pay commissions to Blue Dealer Services, Inc., pursuant to the Agent Agreements.

7. Diversity jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, substantially exceeds $75,000.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) and (3). Defendants directed their demand to arbitrate to Allstate Dealer Services in Jacksonville, Florida, and the Agent Agreements executed by McEachern provide that venue and jurisdiction are conferred by

mutual assent in Jacksonville, Florida. Defendants are subject to this Court's personal jurisdiction with respect to this action pursuant to Fla. Stat. § 48.193(1)(a)(9).

9. Allstate Dealer Services contends that it has no obligation to arbitrate pursuant to Defendants' written demand for arbitration. As a result, an actual controversy exists between Allstate Dealer Services and Defendants.

10. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to make binding declarations of the rights and obligations of the parties, and to adjudicate the dispute between the parties.

## THE AGENT AGREEMENTS

11. On or about April 30, 2013, Blue Dealer Services, Inc., entered into Agent Agreements with E.R.J. Insurance Group, Inc., and Pablo Creek Services, Inc., respectively *See* Exh. 1 & Exh. 2. (collectively, the "Agent Agreements").

12. In the Agent Agreements, Allstate Dealer Services authorized Blue Dealer Services, Inc., to offer automotive aftermarket programs or products to certain lenders, lessors, dealers, and credit unions. *See* Agent Agreements, ¶ 1.

13. The Agent Agreements contain an arbitration provision, providing that disputes arising in respect to the terms, conditions or effects of the Agent Agreements shall be settled by arbitration as the sole remedy available to the parties to the Agent Agreements. *See* Agent Agreements, ¶ 12.

14. The parties to the Agent Agreements are Blue Dealer Services, Inc. and Allstate Dealer Services.

## BLUE DEALER SERVICE, LLC

15. On January 1, 2014, McEachern, together with an individual named Joe Sellers ("Sellers"), formed a separate entity, Blue Dealer Service, LLC.

16. The Operating Agreement for Blue Dealer Service, LLC provided that McEachern would cause Blue Dealer Services, Inc. to cease doing business and all of the corporation's contracts were assigned to Blue Dealer Service, LLC. See **Exhibit 4.**

17. As a result, Blue Dealer Service, LLC became the operating entity and conducted the same business previously operated by the corporation. Blue Dealer Services, Inc., has not operated as a business since 2013 (the year in which it was incorporated) and was dissolved on July 15, 2016. See **Exhibit 5**.[1]

18. McEachern and Sellers are the only two members of Blue Dealer Service, LLC, and Sellers is the manager.

19. There is no Agent Agreement between Blue Dealer Service, LLC, and Allstate Dealer Services.

## THE MICHIGAN LITIGATION

20. McEachern and Sellers have been engaged in litigation surrounding Blue Dealer Service, LLC since 2018. The action remains pending in the Circuit Court for the County of Oakland, Case No. 2018-167691-CB ("the Michigan litigation").

---

[1] In a July 15, 2020 letter, counsel for Allstate Dealer Services advised McEachern's attorney that Blue Dealer Services, Inc. was a dissolved corporation. *See* Exhibit 9 and paragraphs 30 through 36, below, for further context. Undoubtedly in response to that letter, McEachern filed annual reports for Blue Dealer Services, Inc. for the years 2014 – 2019 on July 17, 2020. He also filed a 2020 annual report on July 23, 2020. However, McEachern's attempt to revive Blue Dealer Services, Inc. as a corporation does not provide it with the ability to pursue claims for the years in which it did not operate and was dissolved.

21. Sellers instituted the Michigan litigation against McEachern, alleging, among other things, that:

- McEachern failed to pay income tax withholdings to the United States Internal Revenue Service;

- McEachern diverted funds from Blue Dealer Service, LLC for his own personal use;

- McEachern failed to provide access to or produce copies of financial documents, records, tax documents, and account information as required by the LLC's Operating Agreement and the law;

- As a result of McEachern's actions, the IRS levied $270,000 of tax liens plus interest and penalties against Blue Dealer Service, LLC, McEachern, and Sellers; and

- Sellers personally paid $180,000 of the outstanding IRS tax liens, and he is currently making payments on the remaining balance of $85,000 plus interest and penalties.

*See* **Exhibit 6**, ¶¶ 9, 11-13.

22. On November 7, 2017, McEachern and Sellers entered into a written agreement, acknowledging "a dispute between McEachern and Sellers regarding the business." *See* **Exhibit 7**. McEachern and Sellers agreed to close Blue Dealer Service, LLC, and McEachern agreed to indemnify Sellers with respect to the "tax liability paid by Sellers and any tax liability associated with the Company." *Id.*

23. Sellers also alleged in the Michigan litigation that McEachern breached the November 7, 2017 agreement by failing and/or refusing to reimburse him for the $180,000 payment to the IRS.

24. McEachern filed a Counterclaim against Sellers in the Michigan litigation on October 18, 2018, seeking relief pursuant to the Michigan Limited Liability Company Act, codified at MCL 450.4515. McEachern is seeking from Sellers, among other things, "a full disclosure of all business dealings, bank dealings, [and] customer dealings." *See* **Exhibit 8**.

## INTERNATIONAL AUTOMOTIVE DEALERS II, LLC

25. After execution of the November 7, 2017 agreement, in which McEachern and Sellers agreed to close Blue Dealer Service, LLC, Sellers formed International Automotive Dealers II, LLC ("IAD") on November 13, 2017.

26. McEachern is not a member of, nor is he affiliated with, IAD. However, IAD's employees and business operations are substantially the same as the employees and business operations of Blue Dealer Service, LLC.

27. IAD executed an Agent Agreement with Allstate Dealer Services on November 13, 2017. Sellers signed the Agent Agreement on behalf of IAD.

28. Certain customer accounts that had previously been held by Blue Dealer Service were transferred to IAD pursuant to an authorization letter from Blue Dealer Service to Allstate Dealer Services dated December 7, 2017. Allstate Dealer Services thereafter made commission payments to IAD with respect to those accounts.

29. McEachern did not dispute the commission payments to IAD until an attorney representing McEachern and Blue Dealer Services, Inc. sent the June 17, 2020 letter to Allstate Dealer Services demanding arbitration pursuant to the Agent Agreements.

## ARBITRATION DEMAND

30. On June 17, 2020, both McEachern and Blue Dealer Services, Inc., made a demand for arbitration pursuant to the Agent Agreements. *See* Exh. 3.

31. In the demand for arbitration, Blue Dealer Services, Inc., asserts that it has sustained damages of "millions of dollars" due to Allstate Dealer Service's allegedly wrongful conduct in failing to pay commissions to Blue Dealer Services, Inc., pursuant to the Agent Agreements. *Id.*

32. McEachern and Blue Dealer Services, Inc. seek (1) an award of all commissions that Allstate Dealer Services paid to IAD, rather than to Blue Dealer Services, Inc., (2) damages for breach of contract, and (3) attorney fees and costs. *Id.*

33. McEachern and Blue Dealer Services, Inc. are attempting to demand arbitration against Allstate Dealer Services pursuant to § 12 of the Agent Agreements, which provides:

> 12. ARBITRATION. Any dispute arising in respect of the terms, conditions or effects of this Agreement shall be settled by arbitration as the sole remedy available to both Parties hereto. In the event of any such dispute, either Party hereto may make a written demand for arbitration. Upon such demand, each Party hereto shall select an arbitrator. The two arbitrators will then select a third arbitrator. If the two cannot agree upon a third arbitrator within thirty (30) days following the appointment of the second arbitrator, each arbitrator shall name a candidate for the third arbitrator and the third arbitrator shall be selected by drawing lots between such candidates. If either Party fails to select an arbitrator within thirty (30) days following the written demand for arbitration, the demanding Party may select both arbitrators and such arbitrators shall select the third arbitrator as aforesaid. Each Party shall present its case to the three arbitrators within sixty (60) days following appointment of the third arbitrator, unless the arbitrators permit otherwise. The arbitrators shall render their decision as to the dispute within ninety (90) days following such presentations, unless the Parties hereto mutually agree otherwise. A decision agreed to by two of the arbitrators will be final and binding upon both Parties hereto. Each Party shall pay the expense of the arbitrator it selected and the Parties hereto shall bear the expenses of the third arbitrator equally. In the event the two arbitrators are chosen by the demanding Party as provided above, the two Parties shall bear the total combined expense of all arbitrators equally. Arbitration shall take place in Jacksonville, Florida, or such other places as the Parties hereto may mutually agree upon. The commercial arbitration rules of the American Arbitration Association will apply.

34. The June 17, 2020 written demand for arbitration was prepared by Dione C. Greene of DCG Law Firm, LLC in Lee's Summit, Missouri. In his letter, Mr. Greene purported to select Ken Barnes of the Barnes Law Firm in Kansas City, Missouri as an arbitrator.

35. On July 15, 2020, counsel for Allstate Dealer Services responded to the arbitration demand, advising that McEachern could not invoke arbitration. *See* **Exhibit 9**.

36. Allstate Dealer Services further advised that, as a dissolved corporation that has not operated since 2013, Blue Dealer Services, Inc. cannot invoke arbitration pursuant to the Agent Agreements. *Id.* In addition, Allstate Dealer Services noted that Blue Dealer Services, Inc. cannot claim damages for a time period (November 2017 to present) in which it did not operate or exist. *Id.*

37. In an abundance of caution to prevent any waiver, Allstate Dealer Services sent a second letter to Defendants on July 15, 2020, again asserting that Defendants' request for arbitration appeared to be invalid, but advising that if a decision-maker later

found arbitration to be proper, it selected John A. DeVault, III of the Bedell Firm in Jacksonville, Florida to be its arbitrator. *See* **Exhibit 10**.

38. On July 16, 2020, Ken Barnes sent a letter to John DeVault proposing Henry Service of The Service Law Office in Kansas City, Missouri as the third arbitrator. *See* **Exhibit 11**.

39. Defendants and their counsel have ignored Allstate Dealer Services' objections to the validity of arbitration and are improperly attempting to proceed with arbitration pursuant to the Agent Agreements.

## COUNT I – DECLARATORY JUDGMENT

40. Plaintiffs adopt and incorporate by reference all preceding paragraphs, as if fully set forth herein.

41. McEachern and Blue Dealer Services, Inc., have demanded that Plaintiffs participate in arbitration pursuant to the Agent Agreements.

42. It is Plaintiffs' position that Defendants cannot invoke arbitration pursuant to the Agent Agreements and the arbitration demand is invalid and unenforceable.

43. McEachern, individually, is not a party to the Agent Agreements.

44. Blue Dealer Services, Inc., has not operated as a business since 2013, assigned its contracts to Blue Dealer Service, LLC in January 2014, and was dissolved in 2016.

45. Further, the claims raised in the demand for arbitration should have been asserted by McEachern in the Michigan litigation and should not be split into a separate arbitration action.

46. There is an actual case and controversy between Plaintiffs and Defendants with respect to the arbitration demand, and a bona fide, present, and practical need for a declaration as to the validity of the Defendants' arbitration demand.

WHEREFORE, Plaintiffs E.R.J. Insurance Group, Inc., d/b/a American Heritage Insurance Services, and Pablo Creek Services, Inc., respectfully request that the Court declare and adjudge the controversy as follows:

A. Declare that Defendants cannot invoke arbitration pursuant to the Agent Agreements, and that Defendants' Demand for Arbitration is invalid and unenforceable;

B. Enjoin Defendants, preliminarily and permanently, from initiating or conducting arbitration pursuant to their Demand for Arbitration; and

C. Grant any other relief that the Court deems just and equitable under the circumstances, including the award of costs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

This 29th day of July, 2020.

s/ *Brett M. Carey*
LORI J. CALDWELL
Florida Bar No.: 0268674
E-mail: lcaldwell@rumberger.com (primary)
docketingorlando@rumberger.com and
lcaldwellsecy@rumberger.com (secondary)
BRETT M. CAREY
Florida Bar No.: 91355
E-mail: bcarey@rumberger.com (primary)
docketingorlando@rumberger.com and
bcareysecy@rumberger.com (secondary)
LENA MIRILOVIC
Florida Bar No.: 92492
E-mail: lmirilovic@rumberger.com (primary)
docketingorlando@rumberger.com and
lmirilovicsecy@rumberger.com (secondary)
RUMBERGER, KIRK, & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407.872.7300
Fax: 407.841.2133
Attorneys for Plaintiffs